FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 28, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIEL B., | No. 2:25-CV-00405-ACE |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION |
| v. | |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, | **ECF Nos. 10 & 19** |
| Defendant. | |

**BEFORE THE COURT** is Plaintiff's Opening Brief and Defendant's Brief in response. ECF No. 10, 19. Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney Benjamin J. Groebner represents Defendant. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's motion and **DENIES** Plaintiff's motion.

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income benefits in February 2021, alleging a disability onset date of March 27, 2020. Tr. 206. The application was denied initially and upon reconsideration. Administrative Law Judge (ALJ) Stewart Stallings held hearings on December 7, 2023, Tr. 118-129, and June 5, 2024, Tr. 130-158, and issued an unfavorable decision on July 13,

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

2024, Tr. 17-31.  At the June 2024 hearing, the alleged onset date was amended to February 3, 2021.  Tr. 136-137.  The Appeals Council denied Plaintiff's request for review on August 11, 2025, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on October 10, 2025.  ECF No. 1.

**STANDARD OF REVIEW**

The ALJ is tasked with "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

ORDER GRANTING DEFENDANT'S MOTION . . . - 2

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four the claimant bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099.  This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show:  (1) the claimant can perform other substantial gainful activity; and (2) a significant number of jobs exist in the national economy which the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).  If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE FINDINGS

On July 13, 2024, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.  Tr. 17-31.

At step one, the ALJ found Plaintiff engaged in substantial gainful activity from January 2022 through December 2022, but that Plaintiff had not engaged in substantial gainful activity since December 2022.  Tr. 20.

At step two, the ALJ determined Plaintiff had the following severe impairments:  bilateral carpal tunnel syndrome, lumbar degenerative disc disease, polysubstance abuse in remission, depressive disorder, and anxiety disorder.  Tr. 21.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 21.

ORDER GRANTING DEFENDANT'S MOTION . . . - 3

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found Plaintiff could perform light work with the following limitations:  he can lift up to 20 pounds occasionally and 10 pounds frequently; he can stand and walk for approximately six hours in an eight-hour workday and sit for approximately six hours an eight-hour workday; he can occasionally climb ladders, ropes, and scaffolds; he can occasionally stoop,  crouch, kneel, and crawl; he can frequently handle and finger; and he is limited to simple routine repetitive tasks, in a predictable work environment, with occasional simple workplace changes and work that involves no more than occasional and brief interaction with the public and coworkers, and occasional interaction with supervisors.  Tr. 22-23.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work.  Tr. 29.

At step five, the ALJ found that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, including the jobs of marker, router, and electronics worker.  Tr. 29-30.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the amended alleged onset date, February 3, 2021, through the date of the decision, July 13, 2024.  Tr. 31.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff argues the ALJ reversibly erred by (1) not properly assessing Plaintiff's symptom testimony; (2) improperly rejecting medical opinions; and (3) failing to consider all medical opinions in the record.  ECF No. 10 at 1.

///

///

ORDER GRANTING DEFENDANT'S MOTION . . . - 4

## DISCUSSION

### A.  Plaintiff's Symptom Claims

Plaintiff first contends the ALJ erred by improperly rejecting Plaintiff's subjective complaints.  ECF No. 10 at 4-12.

It is the province of the ALJ to make determinations regarding a claimant's subjective statements.  *Andrews,* 53 F.3d at 1039.  However, the ALJ's findings must be supported by specific, cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) ("Ultimately, the 'clear and convincing' standard requires an ALJ to show [their] work[.]").  Thus, to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony.  *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (emphasis in original).

Here, the ALJ noted several reasons for finding Plaintiff's medically determinable physical and mental impairments did not support greater limitations than those derived in the ALJ's RFC determination.  Tr. 25.

### 1.  Activities

The ALJ found Plaintiff's disability allegations were inconsistent with his activities.  Tr. 25, 24.

An ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.902(a). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. "Only if the level of activity is inconsistent with Claimant's claimed limitations" do "activities have any bearing on Claimant's credibility." *Ferguson,* 95 F.4th at 1203 (quoting *Reddick*, 157 F.3d at 722).

Here, the ALJ found Plaintiff's activities of daily living were inconsistent with the level of disability he alleged. Tr. 25. As noted by the ALJ, while Plaintiff testified that he was unable to work because of hand pain and inadequate sleep at night, Tr. 144, 146-147, Plaintiff reported he was able to take care of his personal needs (i.e., doing laundry, dressing himself, cooking, cleaning, bathing and shopping), Tr. 636, and engage in high level activities such as skiing and snowmobiling, Tr. 683, and working on his motorcycle and truck, Tr. 1793-1794, 1820. Tr. 25. The ALJ also indicated Plaintiff reported engaging in hobbies such as using social media, listening to music, and playing video games. Tr. 24 citing Tr. 636. The ALJ explained Plaintiff's reported activities involve the use of his wrists and hands, mobility, memory, concentration, and adaptability that are not consistent with the limitations he alleged. Tr. 25. The undersigned agrees. This was a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's symptom claims.

ORDER GRANTING DEFENDANT'S MOTION . . . - 6

*2. Work History*

The ALJ also determined Plaintiff's work activity after the protective filing date was inconsistent with his claim of debilitating limitations.  Tr. 25-26.

Employment performed "during any period" of claimed disability may be probative of a claimant's ability to work at the substantial gainful activity level.  20 C.F.R. §§ 404.1571, 416.971; *see Bray v. Comm'r Social Security Admin.,* 554 F.3d 1219, 1227 (9th Cir. 2009) (the ability to perform part-time work can be considered in assessing credibility).

While Plaintiff argues the work he performed was not competitive employment, just sporadic work he did for a friend, ECF No. 10 at 8-9, the ALJ noted records reflect Plaintiff was working at nearly substantial gainful activity levels in the winter and spring of 2023, Tr. 401, and had been working throughout the period at issue, *see* Tr. 683 (February 2023), Tr. 710 (January 2023), Tr. 1714 (August 2023), Tr. 1495-1496 (December 2021).  Tr. 25-26.  In fact, as noted by Defendant, the record shows Plaintiff reported he had been working 13-hour and 14-hour days in 2022.  *See* ECF No. 19 at 5 citing Tr. 929 (May 2022), 1256 (May 2022), 1398 (January 2022).  The ALJ properly discounted Plaintiff's credibility on the basis that he performed work during the period he alleged disability.

*3. Objective Medical Evidence*

The ALJ next found that the objective medical evidence of record did not support the degree of limitation alleged by Plaintiff.  Tr. 26, 27-29.

An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins*, 261 F.3d at 856; *Bunnell v. Sullivan*, 947 F.2d 341, 346-347 (9th Cir. 1991); *Fair*, 885 F.2d at 601.  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a

ORDER GRANTING DEFENDANT'S MOTION . . . - 7

claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

At Plaintiff's March 10, 2024, consultative physical exam, Plaintiff was observed to have a normal gait, had a negative bilateral straight leg raise test, and could walk on his toes without difficulty. Tr. 637. While Plaintiff reported experiencing low back pain when squatting and was noted to have swelling in his bilateral hands, he was also observed to be able to get on and off the exam table without difficulty, and to have stable and non-tender joints. *Id*. Plaintiff's bilateral upper extremity strength was rated four out of five, his bilateral lower extremity strength was rated five out of five, and his bilateral grip was rated four out of five, and, while Plaintiff was noted to have joint abnormality, left lower back pain, and limited ranges of motion in his lumbar spine and hip, his range of motion in his other body systems was otherwise found to be within normal limits. Tr. 637-639. The ALJ also noted State Disability Determination Services physical consultants opined there was insufficient evidence to evaluate Plaintiff's alleged impairments (deemed unpersuasive) and consultative physical examiner Vanessa Santiago, ARNP, opined Plaintiff could perform a range of light exertion level work, with limitations of occasionally pushing and pulling and frequently reaching, handling, fingering and feeling (found generally persuasive). Tr. 27-29. This objective medical evidence is inconsistent with Plaintiff's claim of inability to work. Therefore, this was another valid, clear and convincing reason to discount Plaintiff's subjective complaints.

### 4. Minimal Treatment

The ALJ additionally discounted Plaintiff's credibility based upon his minimal treatment history concerning his carpal tunnel syndrome and lumbar degenerative disc disease. Tr. 26.

In assessing a claimant's credibility, an ALJ properly relies upon "'unexplained or inadequately explained failure to seek treatment or to follow a

ORDER GRANTING DEFENDANT'S MOTION . . . - 8

prescribed course of treatment.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273 at 1284 (9th Cir. 1996)); *Fair*, 885 F.2d at 603. "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p. Moreover, an "unexplained, or inadequately explained, failure to seek treatment may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

As determined by the ALJ in this case, the record reflects Plaintiff did not regularly treat with a primary care physician, neurologist, or otherwise consistently report his hand pain and back issues to providers during the relevant time period. Tr. 26. Although Plaintiff's briefing asserts he has a good reason for not seeking more aggressive treatment; specifically, that no further treatment options were available,[1] ECF No. 10 at 11, Plaintiff does not point to evidence in the record, other than his own statements, to demonstrate that providers informed him that additional or other treatment would not be effective. The undersigned thus finds that the ALJ did not err by relying, in part, upon Plaintiff's failure to seek treatment in concluding Plaintiff lacked credibility.

5. *Mental Health*

The ALJ also found the absence of treatment records concerning Plaintiff's mental health complaints suggested his mental health impairments were not as

---

[1]Plaintiff testified, "there's nothing that they can really do is the problem" and that he was merely told a long time ago that his "hands are going to swell and they're going to hurt at night." Tr. 126.

ORDER GRANTING DEFENDANT'S MOTION . . . - 9

disabling as alleged.  Tr. 26-27 (the ALJ indicated there were very few treatment records related to Plaintiff's mental health during the relevant time period).

While Plaintiff argues that his visits to the Suboxone clinic were effectively mental health treatment sessions, ECF No. 10 at 11, the Court finds that the administration of Suboxone, an oral medication to treat opioid addiction, does not equate to treatment for mental health impairments.

Nevertheless, the ALJ indicated the record reflected that Plaintiff's treatment involving Suboxone medication management and counseling had been effective: while engaged in his treatment program, Plaintiff reported his medication was working well and he was not having cravings or triggers to resume illicit opioid use, Plaintiff was noted to be stable and functioning, and he was found to have good insight and judgment.  Tr. 26.  As found by the ALJ, this evidence suggests his treatment had been relatively successful at controlling his condition.  *See Morgan*, 169 F.3d at 600 (an ALJ may properly rely on a report that a plaintiff's mental symptoms improved with the use of medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (noting impairments that are controlled by treatment cannot be considered disabling).

The ALJ's reference to Plaintiff's minimal mental health treatment and the effectiveness of the treatment he did receive was additional clear and convincing rationale, supported by substantial evidence, to discount Plaintiff's symptom claims.[2]

///

---

[2]In any event, the ALJ specifically held that due to Plaintiff's mental health impairments, Plaintiff was limited to simple routine repetitive tasks, in a predictable work environment, with occasional simple workplace changes, and limited to work that involves no more than occasional and brief interaction with the public and coworkers, and occasional interaction with supervisors.  Tr. 27.

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, and based on the foregoing, the Court finds that the ALJ provided clear and convincing reasons, which are fully supported by the record, for finding Plaintiff's symptom allegations were not entirely credible in this case. Plaintiff is not entitled to remand on this issue.

**B.      Medical Opinion Evidence**

Plaintiff contends the ALJ also erred by failing to properly consider the medical opinion evidence of record. ECF No. 10 at 12-19. Plaintiff specifically asserts the ALJ erred by finding the opinions of consultative psychological examiner London Breedlove, Psy.D., were unpersuasive and by failing to address the reports of Lynette Schultz, Psy.D., HSPP, and Robert Schneider, M.D. *Id.*

For claims filed on or after March 27, 2017, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative findings include supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors (such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and the ALJ must explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2),

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

416.920c(b)(2). The ALJ may explain how she considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record. *Id.* Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

The Ninth Circuit addressed the issue of whether the 2017 regulatory framework displaced the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies. *Id.* at 788-789, 792. The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* at 790, 792. Even under the 2017 regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id.* at 792.

///

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

*1. Dr. Breedlove*

Consultative psychological examiner London Breedlove, Psy.D., examined Plaintiff on February 24, 2024.  Tr. 626-632.  Dr. Breedlove diagnosed Unspecified Bipolar Disorder, Unspecified Anxiety Disorder, Rule-Out Social Phobia, and Opioid Use Disorder, on Agonist Therapy and noted Plaintiff had a history of addiction to multiple substances, including heroin, meth, acid, cocaine, alcohol, and cannabis, a history of multiple years of incarceration, and a spotty work history.  Tr. 631.  He opined that Plaintiff  had several work-related limitations, including "[a]t least marked to severe difficulty" in remembering tasks followed by complex instructions, persisting in tasks followed by both simple and complex instructions, adhering to a schedule and maintaining regular attendance, and interacting and communicating with others in the work setting; and "[s]evere difficulty" performing adequately during a typical workday without negative interruptions from psychological symptoms.  Tr. 631-632.

As determined by the ALJ, Dr. Breedlove's assessed marked and severe limitations are inconsistent with his findings on the mental status exam:  Dr. Breedlove observed that Plaintiff was cooperative with the examination, correctly performed calculation tests, had adequate remote memory, normal eye contact, and had clear, normal speech.  Tr. 28, 629.  Dr. Breedlove observed Plaintiff to have a depressed and anxious mood but noted that Plaintiff's eye contact was normal and that Plaintiff had intact attention, concentration, and no thought content deficits. *Id*.

The Court finds the ALJ also appropriately determined that Dr. Breedlove's assessed marked and severe work-related limitations are not supported.  As noted by Defendant, ECF No. 19 at 13-14, marked and severe limitations would equate to Plaintiff being entirely incapable of working from a psychological perspective.  Yet, the record reflects Plaintiff engaged in high level activities during the relevant time period, including working 13-to-14 hour days at times, Tr. 929 (working 14-

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

hour days for the past two weeks), 1256 (14-hour days), 1398 (working 13-hour days), and skiing, snowmobiling, and working on vehicles, Tr. 683 (skiing and snowmobiling), 1793 (working on his truck), 1820 (working on his motorcycle and truck). Tr. 28. The ALJ also noted unremarkable findings from his history of Suboxone treatment strongly suggested Plaintiff had no more than a moderate limitation in any of his areas of mental functioning. Tr. 28 citing Tr. 539 (reports generally feeling well), 655-656 (stable and functioning), 684 (stable and functioning), 1430 (doing well overall), 1537 (normal affect, good insight, good judgment, calm and cooperative), 1563 (normal affect, good insight, no apparent auditory or visual hallucinations), 1714 (doing good).

Plaintiff is not as limited as Dr. Breedlove opined. The ALJ reasonably found Dr. Breedlove's opinions lacked persuasive value because the assessed limitations were inconsistent with and unsupported by the mental status exam and other evidence of record. With respect to Plaintiff's mental health, the ALJ limited Plaintiff to simple routine repetitive tasks, in a predictable work environment, with occasional simple workplace changes, and work that involves no more than occasional and brief interaction with the public and coworkers, and occasional interaction with supervisors. Tr. 23. The mental health limitations imposed by the ALJ are supported by substantial evidence and free of legal error.

*2. Drs. Schultz and Schneider*

Plaintiff argues the ALJ also erred by failing to articulate reasons for how persuasive he found two medical opinions in the record: a psychological diagnostic report completed by Lynette Schultz, Psy.D., HSPP, on August 7, 2019, Tr. 503-509,[3] and a physical consultative evaluation completed by Robert Schneider, M.D., on August 21, 2019, Tr. 511-523.

---

[3] Dr. Schultz opined Plaintiff had marked limitations in his ability to make judgments on complex work-related decision; interact appropriately with the

An ALJ need not discuss all the evidence presented in the record; only significant probative evidence that bears on the disability analysis. *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. 1984); *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022). Medical opinions that predate the alleged onset of disability are of limited relevance. *Carmickle v. Comm. Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); *Fair*, 885 F.2d at 600.

At the June 2024 administrative hearing, the alleged disability onset date was amended to February 3, 2021. Tr. 136-137. Therefore, the opinions of these medical professionals predate the alleged disability onset date by approximately one-and-a-half years. *See Vargas v. O'Malley*, 2024 WL 1367786 at *11 (E.D. Cal. Apr. 1, 2024) (holding the ALJ did not err by failing to consider medical opinions that predated the alleged onset date). Because the medical reports greatly preceded the alleged onset date, they are irrelevant to the extent that they do not address Plaintiff's medical status during the relevant period at issue in this action. The Court thus concludes that the ALJ did not err in disregarding this evidence.

Based on the foregoing, the Court finds Plaintiff has failed to demonstrate that the ALJ improperly evaluated the medical opinion evidence of record. Plaintiff is not entitled to remand on this issue as well.

///

///

///

///

///

---

public, supervisors, and co-workers; and respond appropriately to usual work situations and to changes in a routine work setting, and noted Plaintiff "appears 'institutionalized' which can hinder his ability to adapt to changes or incorporate new routines, in addition to his persistent symptomology." Tr. 507-508.

ORDER GRANTING DEFENDANT'S MOTION . . . - 15

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS HEREBY ORDERED:**

1.      Defendant's motion to affirm, **ECF No. 19**, is **GRANTED**.

2.      Plaintiff's motion to reverse, **ECF No. 10**, is **DENIED**.

**IT IS SO ORDERED**.  The District Court Executive shall file this Order and provide copies to counsel.  **Judgment shall be entered for Defendant and the file shall be CLOSED**.

DATED July 28, 2026.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 16